UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAI JAN BAO,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>SOLARCITY CORPORATION, et al.,<br><br>　　　　　　　Defendants. | Case No.  14-cv-01435-BLF<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>[Re:  ECF 14, 35] |

Before the Court are competing motions by James Webb and Frederic Paillard Lepage to be appointed lead plaintiff in this putative securities class action lawsuit.  On August 7, 2014, the Court heard oral argument on the motions.  Counsel for movant Lepage did not appear.  For the reasons stated herein, the Court GRANTS the Webb Motion and DENIES the Lepage Motion.

I.　　**BACKGROUND**

On March 28, 2014, plaintiff Tai Jan Bao filed this putative securities class action lawsuit against defendants SolarCity Corporation, Lydon R. Rive, and Robert D. Kelly (collectively, "Defendants").  (Compl., ECF 1)  The Complaint alleges that Defendants made materially false and misleading statements regarding SolarCity's "business, operational, and compliance policies" within a class period from March 6, 2013 to March 18, 2014 ("Class Period").  (Compl. ¶¶ 1, 6)  The impetus for this lawsuit appears to be SolarCity's announcements in March 2014 that it had discovered an error in financial reporting involving the incorrect classification of tens of millions in overhead expenses.  (*Id.* ¶¶ 7-9)  The error was allegedly so pervasive that SolarCity cautioned investors against relying on its previously filed annual reports for 2010, 2011, and 2012.  (*Id.* ¶ 10)  In response to these announcements, SolarCity's securities declined by $1.70 per share on March 3, 2014 and subsequently further declined by $4.40 per share to close on March 19, 2014 at $72.70

United States District Court<br>Northern District of California

per share.  (*Id.* ¶¶ 8, 11)  As a result, plaintiff Bao filed the instant lawsuit on behalf of all persons who purchased or otherwise acquired SolarCity securities during the Class Period.  (*Id.* ¶ 1)

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the plaintiff published a notice of the pending action notifying shareholders of the deadline in which to seek appointment as lead plaintiff.  (15 U.S.C. § 78u-4(a)(3)(A)(i); *see also* Goldberg Decl. to Webb Mot. Exh. A, ECF 36-1)  In response to this notice, on May 27, 2014—the deadline for filing such a motion—five members of the purported class filed competing motions seeking appointment as lead plaintiff.  (*See* Lepage Mot., ECF 14; Collins Mot., ECF 18; Hamilton Mot., ECF 23; Zeng Mot., ECF 28; Webb Mot., ECF 35).  Three movants—Collins, Hamilton, and Zeng—subsequently withdrew their motions.  (*See* ECF 39 (Zeng withdrawal); ECF 40 (Hamilton withdrawal); ECF 44 (Collins withdrawal))  Defendants filed a submission on June 10, 2014 addressing the remaining motions.  (Def.'s Sub., ECF 43)  Movant Webb also responded to the remaining motions on June 10, 2014, (ECF 45), and replied to Defendants' submission on June 17, 2014, (ECF 48).  Movant Lepage has not made any further submissions since he filed his original motion on May 27, 2014, nor did he appear individually or through counsel at the motion hearing on August 7, 2014.

## II.     ANALYSIS

### A.     Appointment of Lead Plaintiff

The PSLRA governs the procedure for selection of lead plaintiff in all private class actions under the Securities Exchange Act of 1934.  15 U.S.C. § 78u-4(a)(3).  The Court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff')."  *Id.* at § 78u-4(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person who has the largest financial interest in the relief sought and otherwise satisfies the requirements of Federal Rule of Civil Procedure 23.  *Id.* at § 78u-4(a)(3)(B)(iii)(I).  Under this rubric, the court must first "compare financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  Upon identifying

United States District Court
Northern District of California

the plaintiff with the largest financial interest, the court determines whether that plaintiff, "based on the information he has provided in his pleadings and declarations," satisfies the requirements of Rule 23(a), "in particular those of 'typicality' and 'adequacy.'" *Id.* If the plaintiff with the largest financial interest satisfies these requirements, he becomes the "presumptively most adequate plaintiff." *Id.*

The presumptively most adequate plaintiff must be appointed lead plaintiff unless that presumption is rebutted "upon proof by a member of the purported plaintiff class" that the presumptive plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements," and absent proof rebutting the statutory presumption of adequacy, the court *must* appoint the plaintiff with the largest financial interest to serve as lead plaintiff, "even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.

### i. Defendants' Standing to Raise Issues in the Present Motions

Given movant Lepage's silence on the matter, the only potential hurdle to Webb's appointment as lead plaintiff comes not from other members of the purported class but from Defendants' submission, wherein they identify errors in Webb's sworn certification, as well as other factors suggesting that Webb may not be entitled to the presumption of most adequate plaintiff. (*See* Def.'s Sub. 5-6, 9, 11)  Webb asserts that Defendants do not have standing to challenge his motion to be appointed lead plaintiff. (Webb Reply 6-8, ECF 48)  While Defendants are precluded from adducing evidence to *rebut* a presumption that he is the most adequate plaintiff, as the PSLRA designates that function to the other *plaintiffs* vying to be lead, the Court is persuaded that nothing in the PSLRA prevents Defendants from directing the Court's attention to mistakes or discrepancies in Webb's motion when deciding whether Webb is entitled to the statutory presumption in the first instance. *See In re Van Wagoner Funds Inc. Sec. Litig.*, No. C02-03383 JSW, Slip Op. (April 9, 2003); *In re Read–Rite Corp. Sec. Litig.,* No. C 97–20059 RMW, Slip Op. at 3 (N.D. Cal. May 28, 1997) ("defendants are not prohibited from challenging

United States District Court
Northern District of California

whether the most adequate plaintiff presumption should be adopted initially by the court."). The Court has an independent obligation to ensure that the class is represented by an adequate lead plaintiff, and will certainly not disregard evidence suggesting that a movant is not presumptively adequate. *See In re Terayon Commc'ns Sys., Inc.*, No. C 00-01967 MHP, 2004 WL 413277, at *6 (N.D. Cal. Feb. 23, 2004).

### ii. Financial Interest

In comparing the financial interests of the remaining movants in contention, it is obvious that Webb has the greatest financial interest. Webb indicated in his original sworn certification that he purchased a total of 37,121 shares during the Class Period on a variety of days and at varying share prices. (Goldberg Decl. to Webb Mot. Exh. B (Webb Certification), ECF 36-2; Exh. C (loss chart), ECF 36-3) Webb sold 24,488 shares in February 2014 and retained 12,633 shares. Based on this activity, Webb asserts that Defendants' allegedly false and misleading statements during the Class Period caused him to lose $233,386. (*Id.*) By contrast, Lepage asserts an overall loss of only $23,646.64. (*See* Lepage Mot. 4; Rosen Decl. to Lepage Mot. Exh. 3, ECF 15-3)

Defendants note that Webb's original sworn certification overstated the price of shares that Webb purchased on January 9, 2014 by about $30. (Def.'s Sub. 5-6) Although Webb reported that those shares were purchased at prices of $97.92 and $97.76, Defendants submitted uncontroverted evidence that SolarCity shares were only trading between $65.34 and $69.91 on that day. (Def.'s Sub. Exh. 6, ECF 43-1) In fact, in response to this error identified by Defendants, Webb submitted a revised sworn certification with his reply brief, stating purchase prices of $67.62 and $67.76 for shares purchased on January 9, 2014. (Goldberg Decl. to Webb Reply Exh. A (Amended Certification), ECF 49-1; Exh. B (amended loss chart), ECF 49-2) This revised certification and loss chart significantly reduces Webb's purported loss from $233,386 to $100,169. Even with this downward revision, however, Webb still has a greater financial interest than Lepage.

As previously noted, three other movants withdrew their motions following the initial flurry of filings. Among these three, Webb's adjusted loss of $100,169 would still be greater than those of movants Collins and Hamilton. (*See* Collins Mot. 4; Hamilton Mot. 5) Movant Zeng

United States District Court
Northern District of California

1  would have had the greatest financial interest regardless of Webb's error, but Zeng withdrew his

2  motion after seeing Webb's original motion.  (*See* Zeng Mot. 3; Zeng Withdrawal 1 (withdrawing

3  motion without stating a reason))  Counsel for Webb also averred at the August 7, 2014 hearing

4  that they had contacted counsel for the other movants and determined that they were not interested

5  in pursuing appointment as lead plaintiff.  As such, the Court is satisfied that Webb's error has not

6  prejudiced other movants.  As the only movant that has diligently pursued appointment as lead

7  plaintiff, and as the movant who appears to have the greatest financial interest, Webb would be the

8  presumptively most adequate plaintiff if he satisfies the requirements of Rule 23.

9  ### iii.  Rule 23 Requirements

10  "At step two of the process, when the district court makes its initial determination, it must

11  rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary

12  process to test the substance of those claims."  *Cavanaugh*, 306 F.3d at 730.  As such, the plaintiff

13  with the greatest financial interest need only make a *prima facie* showing that the Rule 23

14  requirements of typicality and adequacy are satisfied.[1]  *Id.* at 731.

15  In determining whether typicality is satisfied, a Court inquires "whether other members

16  have the same or similar injury, whether the action is based on conduct which is not unique to the

17  named plaintiffs, and whether other class members have been injured by the same course of

18  conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  In this case, like all

19  other members of the purported class, Webb purchased SolarCity securities during the Class

20  Period, when SolarCity's stock prices were allegedly artificially inflated by Defendants'

21  misrepresentations and/or omissions, and allegedly suffered damages when those

22  misrepresentations and/or omissions came to light.  Webb's claims thus appear to be typical, if not

23  identical, to the claims of other members of the putative class.  (*See* Webb Mot. 5-6; *see also*

24  Goldberg Decl. to Webb Reply Exhs. A-B)

25

26  ----

27  [1] Federal Rule of Civil Procedure 23(a) sets forth four requirements for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  Fed. R. Civ. P. 23(a).  At the appointment of lead plaintiff stage, courts need only consider typicality and adequacy, as the failure to satisfy numerosity or commonality would preclude certifying a class action at all.

28  *Cavanaugh*, 306 F.3d at 730 n.5.

United States District Court
Northern District of California

The test for adequacy asks whether the lead plaintiff and his counsel "have any conflicts of interest with other class members" and whether the lead plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, there is no indication of conflicts between Webb and other class members, and Webb's diligence in seeking appointment as lead plaintiff suggests that he and his counsel will prosecute this action vigorously.

Defendants argue that Webb is not an adequate lead plaintiff because the errors in his sworn certification will render him vulnerable to unique defenses, (Def.'s Sub. 5-6), and because Webb's loss calculations are inaccurate to such an extent that he may actually have profited during the Class Period, (*id.* 6-13). These arguments are a preview of the types of arguments that Defendants can and likely will make at class certification. At this preliminary stage, however, the Court finds Webb's amended certification sufficient to make a *prima facie* showing of typicality and adequacy, which is all that is required for Webb to be anointed the presumptively most adequate plaintiff.

### iv.  Rebuttable Presumption

No other movants have responded to Webb's motion to be appointed lead plaintiff in this lawsuit.[2] As such, the presumption that Webb is the most adequate plaintiff is unrebutted, and the Court must GRANT Webb's Motion For Appointment as Lead Plaintiff. LePage's competing motion is accordingly DENIED.

### B.    Appointment of Lead Counsel

Under the PLSRA, the lead plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

---

[2] At this step of the process, Defendants do not have standing to rebut the presumption of adequacy, and the Court does not consider Defendants' arguments for that purpose.

No parties have objected to Webb's selection of Pomerantz LLP ("Pomerantz") as lead counsel and Glancy Binkow & Golder LLP ("Glancy") as liaison counsel.  Although the significant error in representing Webb's financial interest gives this Court pause, counsel for Webb assured this Court at the August 7, 2014 hearing that they would guard against such errors in the future.  As such, and given the two firms' substantial experience in the area of securities fraud class action lawsuits, the Court defers to Webb's choice of counsel.

**III.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    the motion to appoint Frederic Paillard Lepage as lead plaintiff is DENIED;

2.    the motion to appoint James Webb as lead plaintiff is GRANTED without prejudice to Defendants' right to challenge the adequacy of the lead plaintiff as class representative at the time of class certification;

3.    the motion to appoint Pomerantz LLP as lead counsel and Glancy Binkow & Goldberg LLP as liaison counsel is GRANTED; and

4.    **within seven (7) days** from the date of this order, the parties shall meet and confer and submit a stipulated schedule setting forth deadlines for lead plaintiff to file an amended complaint, for Defendants to respond to the amended complaint, and for the parties to brief Defendants' anticipated motion to dismiss.

Dated: August 11, 2014

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California