UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TAI JAN BAO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SOLARCITY CORPORATION, et al., <br><br> Defendants. | Case No.  14-cv-01435-BLF <br><br> **ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT WITH LEAVE TO AMEND** <br><br> [Re:  ECF 58] |

Before the Court is the Motion to Dismiss Amended Complaint by defendants SolarCity Corporation, Lyndon R. Rive, Robert D. Kelly, and Elon Musk (collectively, "Defendants"). Def.'s Mot., ECF 58.  The Court heard oral argument on April 16, 2015.  For the reasons set forth herein and on the record, Defendants' Motion to Dismiss is GRANTED with leave to amend.

## I.   BACKGROUND

Lead plaintiff James Webb ("Plaintiff") represents a putative class of investors who purchased securities from defendant SolarCity Corporation during a class period beginning December 12, 2012 and ending March 18, 2014.  SolarCity is a Delaware corporation that sells renewable solar energy to customers in fourteen states.  Amended Compl. ("FAC") ¶¶ 19-25. Defendant Rive co-founded the company with his brother and is SolarCity's Chief Executive Officer.  Defendant Kelly was the company's Chief Financial Officer during the relevant time period.  Defendant Musk is the Chairman of the Board of Directors and provided the "initial concept" for SolarCity.  Musk and Rive are cousins.  *Id.* ¶¶ 20-22.

SolarCity derives revenue from two types of business operations: sales of its solar energy systems and renewable twenty-year leases of its solar energy products.  *Id.* ¶¶ 27-29.  Under Generally Accepted Accounting Principles ("GAAP"), revenue from sales is recognized in full

upon installation of the solar energy system, whereas revenue from leases is amortized across the term of the lease so that only a fraction of the total value of the lease is recognized in any given year. *Id.* ¶¶ 30-31. Gross profit and net income are calculated under GAAP after the cost of goods sold is subtracted from sales revenue. *Id.* ¶ 32. Plaintiff alleges that during the class period, Defendants deliberately misallocated overhead expenses for the sales operation to the leasing unit in order to improve the sales unit's gross margin and make it appear profitable. *Id.* ¶ 43.

On March 3, 2014, SolarCity announced that due to an error in its formula for allocating overhead expenses between operating lease assets and the cost of solar energy systems sales, it had "discovered tens of millions in overhead expenses that it had incorrectly classified." *Id.* ¶¶ 9, 173. On March 18, 2014, the company disclosed restated numbers for its financial statements for the year ended December 31, 2012, as well as for each quarter in 2012 and 2013. *Id.* ¶¶ 11, 176. The restated numbers revealed that instead of the reported profitability that the sales operation had enjoyed since December 2012, the unit was actually losing money.

Most notably, in 2012—the year in which SolarCity went public—Defendants reported full year sales revenues higher than their corresponding costs, resulting in a gross profit margin of 21% for the company's solar energy systems sales operation. *Id.* ¶ 46. By contrast, in the two years prior to going public, SolarCity reported negative gross margins for its sales unit of (19%) in 2010 and (14%) in 2011. *Id.* After the restatement, it became clear that the 2012 sales unit gross margin was also negative: it was (5%) instead of the reported 21%. *Id.* The overstatement of gross profit and gross margin for the sales unit continued for seven consecutive quarters from Q1 2012 to Q3 2013. In each quarter, the reported sales gross margin was consistently positive (though the amount fluctuated) while, following the restatement, the restated gross margin was generally negative, with only two quarters (Q1 and Q3 2012) showing modest profitability. *Id.* ¶ 47. Plaintiff alleges that this misallocation of indirect costs for solar systems sales also materially affected SolarCity's other reporting metrics including net income and earnings per share (EPS). *Id.* ¶ 48. As such, Plaintiff points to a slew of allegedly misleading statements made in SolarCity's financial statements and press releases during the Class Period, each embodying or reflecting the misallocation of overhead expenses for the sales operation. *See id.* ¶¶ 78-172.

United States District Court
Northern District of California

2

SolarCity had previously had to restate its financial statements for 2008, 2009, and 2010 due to discovered weaknesses in internal control over financial reporting. *Id.* ¶ 34. Confidential witnesses claim that SolarCity's accounting and financial systems "continued to be flawed in 2012" in the months leading up to the IPO. *Id.* ¶¶ 36-37. Plaintiff alleges that Defendants disregarded these known flaws and intentionally manipulated SolarCity's financial statements to create a "façade of profitability for its critical solar energy systems sales." *Id.* ¶ 46. Plaintiff claims that Defendants were motivated by SolarCity's looming initial public offering ("IPO") in December 2012, as well as subsequent secondary offerings and strategic acquisitions, to make the company appear profitable. *Id.* ¶¶ 57-64. Moreover, defendant Musk had pledged six million shares of his SolarCity stock—about one third of outstanding shares—to partially secure a $275 million loan from Goldman Sachs, which Plaintiff alleges contributed to Musk's motive to keep SolarCity's share prices artificially inflated so as to avoid a forced sale of his stock from margin calls. *Id.* ¶¶ 65-69. Finally, Plaintiff points to SolarCity's replacement of its Chief Operating Officer in February 2014 and Kelly's resignation from his position in July 2014 as evidence that Defendants were culpably aware of SolarCity's financial manipulation throughout 2012 and 2013.

Based on the foregoing allegations, Plaintiff asserts claims for (1) securities fraud under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 of the Securities and Exchange Commission ("SEC") and (2) controlling person liability under § 20(a) of the Exchange Act.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial

notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Rule 9(b) and the PSLRA

In addition to the pleading standards discussed above, a plaintiff asserting a private securities fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); *see also In re VeriFone Holdings*, 704 F.3d at 701. Similarly, the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u–4(b)(1)(B). The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2)(A). "To satisfy the requisite state of mind element, a complaint must allege that the defendant[ ] made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings*, 704 F.3d at 701 (internal quotation marks and citation omitted) (alteration in original). The scienter allegations must give rise not only to a plausible inference of scienter, but to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

## III. DISCUSSION

Defendants moved to dismiss the FAC for failure to meeting the pleading requirements for both the § 10(b) claim and the § 20(a) claim. The Court indicated at the hearing that it would grant the motion to dismiss with leave to amend based upon the lack of adequate factual

4

1    allegations on the key issue of scienter.  This order is intended to highlight the areas of primary

2    concern to the Court.

3        A.    **Claim 1 – Section 10(b) and Rule 10b-5**

4        "To state a securities fraud claim, plaintiff must plead: (1) a material misrepresentation or

5    omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or

6    omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or

7    omission; (5) economic loss; and (6) loss causation."  *Reese v. Malone*, 747 F.3d 557, 567 (9th

8    Cir. 2014) (internal quotation marks and citation omitted).  Defendants challenge only the

9    sufficiency of the allegations with respect to scienter.  Def.'s Mot. 8-22.

10       The Court agrees with Defendants that the allegations do not individually support a strong

11   inference of scienter.  Plaintiff argues, relying on *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-

12   05386 WHA, 2012 WL 6000923 (N.D. Cal. Nov. 30, 2012), that the nature and magnitude of the

13   alleged accounting violation supports a strong inference of scienter.  Pl.'s Opp. 8-15, ECF 59.

14   *Diamond Foods* concerned GAAP violations to deliberately understate commodity costs as well as

15   to improperly account for "continuity payment[s]" and "momentum payment[s]" to walnut

16   growers that the defendants knew "were unprecedented, and departed from the company's prior

17   practice and stated policy."  *Id.* at *8.  Here, Defendants are alleged to have deliberately

18   misallocated overhead expenses so as to "craft an image of profitability."  FAC ¶¶ 32, 38-50.  In

19   contrast to *Diamond Foods*, there are no allegations that there was a change in SolarCity's

20   accounting formula for classifying overhead expenses just prior to the class period, that

21   Defendants knew that the formula had changed, or that Defendants knew that the formula had

22   changed in a way that was contrary to prior practice and to GAAP.  To be sure, the fact that the

23   sales unit reported positive gross margins in 2012 after two years of negative margins suggests

24   some change in the company's accounting practices, particularly because the restated gross

25   margins were actually generally negative.  However, without facts suggesting that Defendants

26   were aware that the gross margins from sales were actually negative throughout 2012 and 2013, or

27   suggesting their awareness or encouragement of a change in the accounting formula, the inference

28   of scienter does not defeat the competing inference of a non-actionable mistake.  Moreover,

United States District Court
Northern District of California

United States District Court
Northern District of California

allegations gleaned from confidential witnesses add nothing to bolster an inference of scienter. Those witnesses have failed to assert personal knowledge of the relevant factual allegations needed to support scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

Likewise, Plaintiff's reliance on the core operations doctrine of scienter is unavailing. *See* Pl.'s Opp. 15-17. As the Ninth Circuit recently reiterated, "[p]roof under this theory is not easy." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).

> Core operations may support a strong inference of scienter under three circumstances: "First, the allegations may be used in any form along with other allegations that, when read together, raise an inference of scienter that is cogent and compelling, thus strong in light of other explanations.... Second, such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information.... Finally, such allegations may conceivably satisfy the PSLRA standard in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter."

*Id.* at 1062 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008)). There are no allegations that Defendants had actual access to information suggesting that the overhead expenses had been misallocated or that the allocation of overhead expenses is such a prominent piece of financial information that it would have been absurd for management to be unaware of the misallocation. Without more, Plaintiff would simply be inviting the Court to infer, based upon the difference in reported and restated gross margins that Defendants must have known of the discrepancy. That inference, by itself, is insufficiently cogent to satisfy the PSLRA's exacting pleading requirements. *Zucco Partners*, 552 F.3d at 990, 1000-01.

As stated on the record, a holistic assessment of the facts presents a closer call. As already discussed, the misclassification of overhead expenses in the present case is somewhat less obvious and basic than the misallocation of commodity costs considered in *Diamond Foods*. That the misallocations occurred in a period of time during which SolarCity had its IPO, a secondary offering, and made two acquisitions suggests that Defendants would have been motivated to maintain SolarCity's stock price. However, "[i]f scienter could be pleaded merely by alleging that

officers and directors possess motive and opportunity to enhance a company's business prospects, 'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'" *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995)); *see also Zucco Partners*, 552 F.3d at 1004-05. There must be something more connecting the alleged GAAP violations to Defendants' motive to commit those violations, and Plaintiff has not alleged such a link to elevate his claim from the realm of mere possibility. The allegations of corporate reshuffling and Defendants' Sarbanes-Oxley certifications lack such probative value that they contribute little to the mix. *See* Pl.'s Opp. 18-19. Likewise, Plaintiff's confidential witnesses both left SolarCity *before* the first of the disputed statements were made and, as such, provide little reliable insight into what occurred during the class period. FAC ¶¶ 36-37; *Zucco Partners*, 552 F.3d at 996. Thus, while there is some inference of scienter on a holistic analysis of the facts, it is not quite "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

In summary, the Court concludes that even viewed holistically as required under *Tellabs*, Plaintiff's allegations do not give rise to a strong inference of scienter that is at least as compelling as an inference of nonfraudulent conduct. The Court accordingly GRANTS the motion to dismiss with leave to amend.[1]

**B.  Claim 2 – Section 20(a)**

Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be

---

[1] In connection with the present motion, Defendants filed a Request for Judicial Notice ("RJN") of numerous exhibits. ECF 58-1. Exhibits A, B, K, and L are referenced in the FAC and may be considered as incorporated by reference therein. *Tellabs*, 551 U.S. at 322. Exhibits C, and F-J are SEC filings that are appropriate for judicial notice because they are matters of public record not subject to reasonable dispute. Fed. R. Evid. 201(b); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049,1064 n.7 (9th Cir. 2008). Exhibit D consists of historical price data for SolarCity shares from December 13, 2012 through March 28, 2014 and may be judicially noticed because Plaintiff does not dispute its accuracy. *Id.* The Court considers Exhibit E, which is a slip opinion from *In re Sagent Technology, Inc. Securities Litigation*, No. C-01-4637, (N.D. Cal. Sept. 11, 2002), as persuasive case authority only and does not take judicial notice of the facts set forth therein. As such, Defendants' RJN is GRANTED with respect to Exhibits A-D and F-J.

United States District Court
Northern District of California

1    liable jointly and severally with and to the same extent as such controller person."  A plaintiff

2    suing under § 20(a) must demonstrate: (1) "a primary violation of federal securities laws" and (2)

3    "that the defendant exercised actual power or control over the primary violator."  *Howard v.*

4    *Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  The SEC has defined "control" to mean:

5    "[T]he possession, direct or indirect, of the power to direct or cause the direction of the

6    management and policies of a person, whether through ownership of voting securities, by contract,

7    or otherwise."  17 C.F.R. § 230.405.

8         Because Plaintiffs have failed to state a claim for a primary violation of the securities laws,

9    they likewise have failed to state a claim for violation of § 20(a) of the Exchange Act.

10        Defendants further urge that the Court dismiss Plaintiffs' § 20(a) claim against defendant

11   Musk for failure to adequately allege his individual liability as a control person over SolarCity.

12   Def.'s Mot. 22-23.  The "controlling person" analysis is an intensely factual one requiring inquiry

13   into a "defendant's participation in the day-to-day affairs of the corporation and the defendant's

14   power to control corporate actions."  *Howard*, 228 F.3d at 1065 (quoting *Kaplan v. Rose*, 49 F.3d

15   1363, 1382 (9th Cir. 1994)).  A plaintiff is not required to show the defendant's "actual

16   participation or the exercise of actual power."  *Id.*  However, the plaintiff must allege specific facts

17   concerning a defendant's responsibilities within the company that demonstrate his involvement in

18   the day-to-day affairs of the company or specific control over the preparation and release of the

19   allegedly false and misleading statements.  *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96

20   F.3d 1151, 1163-64 (9th Cir. 1996); *see also In re Immune Response Sec. Litig.*, 375 F. Supp. 2d

21   983, 1031 (S.D. Cal. 2005).

22        The present allegations fall short.  Plaintiffs allege that Musk is Chairman of the Board of

23   Directors, owns roughly 30% of SolarCity's outstanding shares, is related to SolarCity's officers,

24   and signed certain of SolarCity's financial statements as required by law.  FAC ¶¶ 66-68, 72-73,

25   77.  There are neither factual allegations respecting Musk's power to exercise decision-making

26   power, nor allegations of his involvement in the day-to-day operation of the defendant entity.  For

27   example, the assertion that Musk "easily control[led] the activities of the Company through the

28   direction of his close relatives," *id.* ¶ 8, is speculation based upon Musk's familial relationship

1    with defendant Rive and not a reasonable inference supported by any facts indicating that Musk

2    actually had the power to control SolarCity's activities or to direct how Rive controlled those

3    activities.  Likewise, SolarCity's statement that Musk is a member of the company's "senior

4    leadership team" suggests high level guidance of the company but does not indicate that he

5    participates in its day-to-day oversight or is authorized to control the preparation of financial

6    statements.  *Id.* ¶ 68; *cf. Howard*, 228 F.3d at 1066.  In short, the present allegations are too

7    conclusory to establish Musk's liability as a control person.  At this juncture, the Court cannot

8    conclude that amendment would be futile.  As such, Plaintiffs shall have leave to amend to allege

9    further facts supporting their assertion that Musk is liable as a control person under § 20(a).

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to

Dismiss the Amended Complaint is GRANTED, with leave to amend.  Any amended complaint

shall be filed **on or before June 19, 2015.**

**IT IS SO ORDERED.**

Dated: April 27, 2015

BETH LABSON FREEMAN
United States District Judge